| | |
|---|---|
| SARAH SMITH,            )<br>                                 )<br>    Plaintiff,                )          Jury Demanded<br>                                 )<br>v.                               )          Case No. _____<br>                                 )<br>SISKIN STEEL & SUPPLY    )<br>COMPANY, INC.,           )<br>                                 )<br>    Defendant.               )| |

# COMPLAINT

Plaintiff sues Defendant and shows the Court as follows:

## I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1331, to secure protection and redress for the deprivation of rights granted by Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, regarding discrimination in employment based on sex. Further there is diversity of citizenship and the amount in controversy exceeds $75,000. As such, this Court also has jurisdiction over this matter pursuant to 28 U.S.C. §1332. In this lawsuit, Plaint iff also alleges violations of companion state laws, including the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-101, et seq. and §4-21-401, and this Court has supplemental jurisdiction over the same pursuant to 28 U.S.C. §1367.

2. The acts complained of herein took place in Hamilton County, Tennessee. Venue is appropriate in this Court and Division.

## II. THE PARTIES

3. Plaintiff is a female, who is a resident of Trenton, Dade County, Georgia.

4. Defendant is a private company headquartered in Hamilton County, Tennessee, and, having a sufficient number of employees, it was/is an "employer" as defined by Title VII and the THRA. As such, Defendant is covered by the requirements of Title VII and the THRA.

### III. FACTUAL BASES OF PLAINTIFF'S CLAIMS

5. In the Fall of 2019, Plaintiff was subjected to a reduction in force that caused her to lose her job. As such, in January of 2020, she was looking for a job and she had made that known to friends and family in case they learned of opportunities.

6. Plaintiff had prior experience working in the fields of construction, electrical, and customer service.

7. Plaintiff then learned of a job opportunity with Defendant. She learned about it through Buford ("Buddy") Stephens, one of Defendants' employees who also served as a volunteer firefighter with Plaintiff's spouse.

8. Mr. Stephens told Plaintiff on January 15, 2020 that Defendant was looking to fill a position operating the flame burner. Mr. Stephens said that Defendant had listed the job internally, but nobody was interested in it. The job paid between $16 and $18 an hour.

9. Mr. Stephens told Plaintiff that if she was interested, she should contact Defendant's Superintendent, Todd McAllister.

10. Plaintiff told Mr. Stephens that she was interested in the job. She spoke to him again on January 16, 2020 at length about the position. Mr. Stephens told Plaintiff that he had talked to Mr. McAllister about her and that Mr. McAllister said that it would be "trouble" because Plaintiff is a female.

11. Upon information and belief, in the past, Defendant had a female employee working in the plant who ended up having a sexual relationship with a coworker. Apparently, Defendant felt it could avoid this dilemma by having a primarily male plant workforce.

12. Upon information and belief, Defendant had a pattern and practice of not hiring female employees or only hiring male employees into plant positions classified as skilled craftsman or machine operators with the EEOC.

13. Mr. Stephens reported that he told Mr. McAllister that this would not be a problem because Plaintiff is married and gay.

14. Despite her natural concern about Mr. McAllister's comments, she was interested in the job and contacted him that same day. Mr. McAllister asked Plaintiff if she wanted to come in and try out the flame burner and see whether she would be interested in running it.

15. Accordingly, on January 17, 2020, Plaintiff went to the plant in proper attire and proper PPE. When she arrived, she met Mr. McAllister and then Mr. Stephens showed her some work orders and gave her a brief overview of how the flame burner worked.

16. After learning the machine, Mr. McAllister asked if she was interested in "giving it a shot." He said that nobody at the plant wanted the job and they were desperate to hire someone. Plaintiff said yes and they walked to the front office area to fill out paperwork and begin written measurement testing.

17. After completing the paperwork and after Mr. McAllister spoke with others, Mr. McAllister told Plaintiff about some "plant drama" and said, as a result, he would have to schedule a time for a proper interview in the near future. Mr. McAllister indicated that he would call Plaintiff to set that up, along with her physical.

3

Case 1:20-cv-00360-JRG-CHS     Document 1     Filed 12/23/20     Page 3 of 6     PageID #: 3

18. While there, Plaintiff only observed one other female employee and she worked in the office area.

19. Plaintiff did not hear back from Mr. McAllister so she called him on January 23, 2020. He told her that he was busy and would call her back soon.

20. Mr. McAllister did not call back. As such, Plaintiff again contacted him on January 28, 2020 and left him a voice message. He called back several hours later and said that if she were willing to work third shift, he would hire her. In the call, Mr. McAllister indicated that the current flame burner employee was making too many errors and they had a large job coming in. He said they needed to fill all shifts for the flame burner and it was likely that Plaintiff could be moved to second shift in the near future. He also said that nobody else was interested in the position because they were lazy.

21. Plaintiff told Mr. McAllister that she was interested in the job, but needed to discuss it with her spouse before she committed to it.

22. During the call, Plaintiff could hear someone speaking in the background at Siskin, telling Mr. McAllister about concerns and issues to raise with Plaintiff. Mr. McAllister concluded the call by telling Plaintiff that it was fine for her to think it over.

23. Plaintiff decided to accept the job offer and called Mr. McAllister on January 29, 2020 to tell him that. He did not answer the telephone, so she left him a voice message telling him that she accepted.

24. Later that day, Plaintiff was called by Mr. Stephens. Mr. Stephens told Plaintiff that Defendant was not going to hire her because it did not know where she would go to the bathroom. He also reported to Plaintiff that another supervisor or manager told Mr. McAllister that they didn't think he was serious about wanting to hire a woman.

4

25. Having not heard this directly from Mr. McAllister, Plaintiff called him the next day. When he spoke, his voice sounded unusual and he told Plaintiff that all of a sudden four people signed up for the flame burner job and that maybe he could get Plaintiff a warehouse position at a later time.

26. Mr. Stephens later told Plaintiff that nobody had signed up for the flame burner position at the time of that call. Instead, people who had signed up for other machines were made to work the flame burner.

27. Indeed, Plaintiff was rejected for the position due to her sex/gender.

28. Plaintiff believes the reasons communicated for her non-hire were pretextual and were given to mask the true reason for her non-hire, which was discriminatory and unlawful.

**PLAINTIFF'S CLAIMS**

29. By refusing/failing to hire Plaintiff as alleged herein, by treating her in the manner alleged herein, and by committing all acts alleged herein, Defendant discriminated against Plaintiff on the basis of her sex in violation of 42 U.S.C. §2000e-2(a) and the THRA.

30. Plaintiff has suffered damages as a result.

**ADMINISTRATIVE EXHAUSTION**

31. On March 12, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). On November 19, 2020, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff brings this action within 90 days of the Notice of Right to Sue. Thus, this action has been timely filed.

**DAMAGES**

32. As a result of Defendant's unlawful acts described above, Plaintiff has suffered both financially and emotionally. In particular, Plaintiff has lost and will continue to lose wages and

career advancement opportunities. In addition to the actual and financial loss Plaintiff has sustained, she has suffered mental anguish resulting from the embarrassment and humiliation which she experienced because of Defendant's unlawful actions. She has also incurred attorney's fees in the prosecution of these claims.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a.  That the Court issue and serve process on Defendant and require Defendant to answer within the time prescribed by law;

b.  That Plaintiff be awarded judgment for damages for lost wages and employee benefits which she has lost from the date of Defendant's discriminatory actions;

c.  That the Court issue an injunction requiring Defendant to hire Plaintiff into the position of flame burner or an equivalent position; or in the alternative, to award front pay in lieu thereof;

d.  That Plaintiff be awarded compensatory damages, including damages for humiliation, embarrassment, grief, and/or emotional distress;

e.  That Plaintiff be awarded attorney fees, court clerk costs, and litigation expenses, and such other and further relief as the Court deems proper; and

f.  Plaintiff demands a jury to try all claims and issues triable by a jury.

Respectfully submitted,

MIKEL & HAMILL PLLC

By: _s/ *Donna J. Mikel*_____
      Donna J. Mikel, BPR#020777
      Attorney for Plaintiff
      620 Lindsay St., Suite 200
      Chattanooga, TN 37403
      (423) 541-5400