UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| SARAH SMITH, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 1:20–CV–360 |
| SISKIN STEEL & SUPPLY COMPANY, INC., | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

Plaintiff Sarah Smith applied for a job as a third-shift Flame Burner at Defendant Siskin Steel & Supply Company, Inc. She received an offer. Then, Defendant withdrew the offer. Why? Defendant has given different reasons at different times. Defendant first told Plaintiff that it had internal applicants. Then, Defendant told the EEOC that it never heard back from Plaintiff after offering her the job, so it hired an internal candidate. Now, Defendant says that it eliminated the position offered to Plaintiff. Plaintiff gives one reason for why she was not hired—because she is a woman.

After Plaintiff did not receive the job, Plaintiff filed this lawsuit under Title VII, 42 U.S.C. § 2000e–2(a), and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4–21–401. The Parties conducted discovery, and Defendant filed a motion for summary judgment, requesting a judgment in its favor or an ordering limiting Plaintiff's damages. A jury must decide issues of fact on both matters, and, for the reasons stated below, Defendant's Motion for Summary Judgment, [Doc. 47], is DENIED.

1

I. **Factual Background**

Defendant Siskin Steel & Supply Company, Inc. ("Siskin"), is a steel processing and distributing company. [Hammond Dep., Doc. 49-1, PageID 213]. It has five locations throughout the United States, including one in Spartanburg, South Carolina, and another in Chattanooga, Tennessee. [*Id.* at PageID 214–16]. At the Tennessee location, Defendant has its corporate office, human resources office, a large warehouse (around 430,000 square feet), and a processing bay. [Hammond Dep., Doc. 58-4, PageID 553, 556, 639]. From the record, Defendant's Chattanooga location appears to be a large complex.

The layout of Defendant's Chattanooga facility is unclear, especially the location of women's restrooms. Oddly, some of Defendant's own employees, including Vice President Link Hammond, do not know whether the restrooms and locker rooms are for men, women, or unisex. [*See, e.g.,* Hammond, Doc. 49-1, PageID 241–42 ("I'm not a hundred percent sure. I believe there to be bathrooms back in this area and bathrooms over in this area here (indicating).")]. Mr. Hammond indicated that the only female restrooms were between the human resources office and shipping and receiving office. [Doc. 58-4, PageID 638–39]. Other employees did not know where a woman would use the restroom if she worked in the production area. [Stephens, Doc. 49-6, PageID 323].

On January 6, 2020, Link Hammond became Defendant's Vice President of Operations. [Doc. 49-1, PageID 214–15]. Before becoming vice president, he was a division manager in Spartanburg. [*Id.*]. After his promotion, he moved to the Chattanooga location. [*Id.*]. When Mr. Hammond was promoted, he was given at least two goals and initiatives by Dan Youngman, Defendant's President and Chief Operating Officer. [*Id.* at PageID 216; Interrog, Doc. 49-14,

PageID 366]. First, he would be Chattanooga's acting division manager, and second, he "should staff [the] processing equipment on all shifts." [Doc. 49-1, PageID 216].

Under Mr. Youngman's directive, multiple shifts needed to be filled, including a "Multi-head operator." [*Id.*]. The multi-head was also called the "Flame Burner" or "flame." [Stephens Dep., Doc. 58-3, PageID 523]. It is used to cut flat sheet metal. [Doc. 58-4, PageID 606]. The Flame Burner operator was not an entry level position at Siskin, [*Id.* at PageID 554], and Defendant posted an internal, job-opening notice for third-shift Flame Burner operator on January 10th through the 15th, [McAllister Dep., Doc. 49-3, PageID 301]. No current employees signed up for the position. [*Id.* at PageID 302].

Although no one at Siskin was interested in moving to the Flame Burner position, Plaintiff Sarah Smith was. [Smith Dep., Doc. 49-2, PageID 256–57]. Plaintiff Smith learned about the position through her wife. [*Id.*]. Her wife volunteered at the local fire department with Buford "Buddy" Stephens, an employee at Siskin. [*Id.*]. Mr. Stephens put Plaintiff Smith in touch with Assistant Operations Manager Todd McAllister. [*Id.* at PageID 259–30; Doc. 49-14, PageID 368].

Plaintiff and Mr. McAllister had a phone call on January 16 to set up an in-person interview. [McAllister Dep., Doc. 58-6, PageID 673]. They arranged to meet the next day. [*Id.*]. As planned, Mr. McAllister and Mr. Stephens met with Plaintiff, and they showed her how the Flame Burner worked. [*Id.* at PageID 674]. Then, they went to human resources so Plaintiff could fill out an application. [*Id.*]. Mr. McAllister said that the opening would be for third shift, and he considered this interaction Plaintiff's interview. [*Id.* at PageID 674–76].

During her tour of Siskin, Plaintiff saw only one female employee, and she worked in the offices, not the warehouse or production area. [Smith Dep., Doc. 58-2, PageID 484–85]. No women worked in the other areas she saw. [*Id.*].

3

On January 28, Mr. McAllister called Plaintiff and told her that she could have the third-shift Flame Burner job. [Doc. 49-2, PageID 271]. Plaintiff understood this to be a job offer. [*Id.* at PageID 279]. Plaintiff asked for some time to speak to her wife. [*Id.* at PageID 271–72]. The next day, she called and left a voicemail on Mr. McAllister's phone. [*Id.* at PageID 273]. In this voicemail, she said something like, "Hey, Todd. It's Sarah. I'm just calling to let you know that we decided third shift wouldn't be so bad. Give me a call and let's see where we go from here." [*Id.*]. Mr. McAlister claims to have not heard this voicemail until April 2020. [*Id.* at PageID 307].

Although Mr. McAlister called Plaintiff to offer her the job on January 28, Mr. Hammond claims to have changed his mind about hiring a third-shift Flame Burner. He said that, between January 15 and January 30, he told Mr. McAllister to hold off on hiring a Flame Burner. [Doc. 49-1, PageID 226–27]. He said that he needed more time to look at data. [*Id.*]. Mr. Hammond also sent an email on January 23, 2020, to human resources director Rick England that said, "Lets hold on hiring anyone until we meet again. With some changes we may not need quite as many as we originally discussed." [Email, Doc. 49-8, PageID 331].

Then, on January 30th, there was a meeting to discuss only the Flame Burner position. [Doc. 58-4, PageID 599]. Mr. Hammond cannot recall what time of day it was, and he did not take notes. [*Id.* at PageID 602]. In this meeting, according to Mr. Hammond, Mr. Hammond told Mr. McAllister that a third-shift Flame Burner operator was not needed, and they would stick with what they had, a first and second shift. [*Id.*]. Contradicting that this meeting was just about the Flame Burner position, in his deposition, Mr. McAllister said that he was told not to hire anyone for the burners or saws, not just the Flame Burner. [Doc. 49-3, PageID 309].

Also on January 30th, Mr. McAllister called Plaintiff and told her that she would not be hired. [Doc. 49-2, PageID 274]. In this phone call, Mr. McAllister said that four current employees

4

signed up for the third-shift Flame Burner position internally.[1] [*Id.* at PageID 274, 279]. It is unclear from the record whether this phone call happened before or after the meeting.

On the very next day, January 31st, Defendant fired the second-shift Flame Burner operator. [Emily Cornett Dec., Doc. 50, PageID 374]. Siskin claims that there was no need to hire another Flame Burner operator, and that the position remained vacant until June 2021. [*Id.*]. However, Defendant has also said that Doug Turner, a current employee at the time, was moved to third-shift Flame Burner because Plaintiff did not accept its job offer. [EEOC Position Statement, Doc. 58-12, PageID 753]. Similarly, pay records state that Doug Turner was "Processing-3rd Multih[]." [Doc. 58-24]. In his deposition, Mr. Stephens said that he started training Mr. Turner on the Flame Burner, but Mr. Turner never finished the training. [Stephens Dep., Doc. 49-6, PageID 324]. Defendant claims that other people filled in on the Flame Burner when extra work was required. [Doc. 50, PageID 374]. Sometimes, Defendant paid overtime to many of these employees. [*See generally* Overtime Worksheet, Doc. 58-25].

Once Plaintiff was told that the job was no longer available, she returned to an old job at "UltiMachine," where she made between $14.00 and $16.00 per hour. [Doc. 58-33; Doc. 61, PageID 918]. According to a summary of Plaintiff's wages from UltiMachine, her hours were inconsistent, and her weekly pay was as low as $95.62. [Doc. 58-33]. She received health insurance at this job. [Doc. 49-2, PageID 254]. She eventually left to start a business with her brother. [*Id.* at PageID 245]. At this business, she made $500 a week but did not receive benefits. [*Id.* at 286–87].

---

[1] For the purposes of the motion for summary judgment, Defendant does not dispute that Mr. McAllister made this statement. [Doc. 63, PageID 1000].

During the pendency of this litigation, Siskin offered her a job as a warehouser, an entry level position, which she ultimately rejected. [*Id.* at PageID 280–283]. Also relevant to the case, during the COVID–19 pandemic, Siskin laid off employees in April 2020. [Cornett Decl., Doc. 58-11, PageID 746]. However, no machine operators were laid off. [*Id.*].

## II. Procedural History

On March 12, 2020, Plaintiff, through counsel, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). [EEOC Charge, Doc. 58-1]. On November 19, 2020, Plaintiff received her right to sue letter from the EEOC. [Compl., Doc. 1, PageID 5, ¶ 31; Am. Answer, Doc. 16, PageID 64, ¶ 31]. Then, Plaintiff filed this lawsuit on December 23, 2020. [Doc. 1]. After a brief extension, discovery concluded on February 21, 2022. [Doc. 39], and Defendant filed its motion for summary judgment on March 1, 2022, [Doc. 47], along with a statement of undisputed material facts, [Doc. 49]. Plaintiff filed a response to the motion for summary judgment, [Doc. 60], and filed a response to the statement of undisputed material facts along with additional undisputed facts, [Doc. 61]. Then, Defendant filed a reply, [Doc. 62], a response to Plaintiff's statement of additional undisputed material facts, [Doc. 63], and replied to Plaintiff's responses to Defendant's statement of undisputed material facts, [Doc. 64]. Neither party requested oral argument, and the motion is ripe.

## III. Summary Judgment Standard

A court grants a motion for summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

6

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)); *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 499 (6th Cir. 2006). An issue is genuine if, when evaluating the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it affects the outcome of the case based on applicable substantive law. *Id.* Last, all facts and inferences are viewed in the light most favorable to the nonmoving party. *Max Arnold & Sons, LLC*, 452 F.3d at 499.

## IV. Discussion

Plaintiff brings claims under Title VII, 42 U.S.C. § 2000e–2(a), and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4–21–401. [Doc. 1, PageID 5]. Title VII and the THRA prohibit an employer from discriminating based on sex. 42 U.S.C. § 2000e–2(a); Tenn. Code Ann. § 4–21–401(a)(1); *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 993 (6th Cir. 1999). Both parties agree that Tennessee law and federal law on the issues before the Court are the same, [Doc. 48, PageID 178; Doc. 58, PageID 426]. *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 993 (6th Cir. 1999) ("The Tennessee Supreme Court has held that THRA claims are analyzed in the same manner as Title VII claims"); *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996).

When bringing these claims, "a plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination."[2] *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir. 1997). The ultimate issue in a case like this is to determine if "the plaintiff was

---

[2] Another type of claim, mixed-motive, is available under Title VII, but neither party makes a mixed-motive argument. 42 U.S.C. § 2000e–2(m); *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012).

7

the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 153 (2000); *see Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). When deciding if a defendant discriminated against a plaintiff, statements made by the defendant's employees do not satisfy the plaintiff's burden unless those statements were made by a decisionmaker during the decision-making process. *Geiger*, 579 F.3d at 620–21 (6th Cir. 2009) (quoting *Bush v. Dictaphone Corp.,* 161 F.3d 363, 369 (6th Cir.1998)).

In its motion and reply, Defendant argues that no material facts are in dispute and Plaintiff cannot meet her burdens under Title VII and THRA. Plaintiff disagrees and argues that disputes of material facts exist, and she can meet her burden by showing discrimination through circumstantial evidence and direct evidence.

    a. Circumstantial Evidence

Defendant argues that Plaintiff cannot succeed on her claim based on circumstantial evidence. [Doc. 48, PageID 177]. Sex discrimination claims relying on circumstantial evidence use the familiar *McDonnell Douglas* framework. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008); *see Hashem-Younes v. Danou Enterprises Inc.*, 311 F. App'x 777, 778 (6th Cir. 2009). Under the framework, "a plaintiff must first establish a *prima facie* case of discrimination . . . . " *Russell*, 537 F.3d at 604. After a plaintiff has shown a *prima facie* case, the plaintiff has established a rebuttable presumption of discrimination, and "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action." *Id.* (quoting *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001)). Once the defendant has articulated a legitimate, nondiscriminatory reason, "the plaintiff must then prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id.* (internal quote omitted).

8

1. *Prima facie* case

Establishing a *prima facie* case "is not onerous." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). A plaintiff need only show by the "preponderance of the evidence that she applied for an available position for which she was qualified[] but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Id.* A plaintiff can do so "by showing that: '(1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was replaced by a person outside of the protected class.'" *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (quoting *Carter v. Univ of Toledo,* 349 F.3d 269, 273 (6th Cir. 2003)). But the elements are not rigid; the framework is "flexible, adaptive" and should not be applied mechanically. *Harmon v. Earthgrains Baking Companies, Inc.*, No. 08–5227, 2009 WL 332705, at *6 (6th Cir. Feb. 11, 2009) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 n.13 ("[T]he *prima facie* proof . . . is not necessarily applicable in every respect to differing factual situations.")). And a court should modify or depart from the usual formulation of the framework when the facts require it. *Id.*

For instance, in some circumstances, "[a] plaintiff may also satisfy the fourth prong of a *prima facie* case showing by adducing evidence that she 'was . . . treated differently than similarly situated non-protected employees.'" *Russell*, 537 F.3d at 604 (quoting *Newman v. Fed. Express Corp.,* 266 F.3d 401, 406 (6th Cir. 2001)). Or a plaintiff may show that the defendant did not hire her and "kept the position open and continued to seek other applicants." *George v. Youngstown State Univ.*, 966 F.3d 446, 470 (6th Cir. 2020). Similarly, a district court in this circuit has ruled that a plaintiff established a *prima facie* case if someone in a protected class "made his interest in the position known and that it was eliminated before he could apply to it . . . ." *Wilson v. Brennan*,

213 F. Supp. 3d 934, 946 (S.D. Ohio 2016) (citing *Darden v. Town of Stratford*, 420 F.Supp.2d 36, 43 (D. Conn. 2006); *Feder v. Bristol-Myers Squibb Co.*, 33 F.Supp.2d 319, 325 (S.D.N.Y. 1999)).

In this case, Defendant "does not dispute that Plaintiff can meet the first, second, and third elements of a *prima facie* case." [Doc. 48, PageID 178]. Instead, Defendant focuses on the last element. [*Id.*]. Defendant contends that it did not hire anyone for "the third[-]shift Flame Burner position and ceased looking for applicants, Plaintiff cannot meet the fourth element, and her claim fails as a matter of law." [*Id.*].

Whether Defendant filled the third-shift Flame Burner position is a disputed fact. Defendant repeatedly asserts that it did not hire anyone for the third-shift Flame Burner position. [Doc. 48, PageID 178; Doc. 62, PageID 972]. Evidence in the record supports this argument, including the deposition testimony of Mr. Hammond, Mr. McAllister, and Mr. Stephens. But that evidence is disputed by other facts in the record.

In particular, three pieces of evidence in the record contradict Defendant's point. First, Defendant, through its attorney, told the EEOC that Doug Turner was hired for the third-shift Flame Burner position. [Doc. 58-12, PageID 753].[3] Defendant said in its EEOC statement: "Siskin Steel . . . transferred Mr. Turner to the third-shift Flame Burner position on February 24, 2020 . . . ." [*Id.*]. Second, Doug Turner's time sheet lists his department as, "Processing–3rd–Multih[]."[4] [Doc. 58-24]. Given that the Flame Burner was called the "multi-head," when viewing the facts in

---

[3] Although the EEOC position statement says that "Siskin Steel submits this statement with the understanding and on the condition that this statement and exhibits will be excluded from evidence at a trial," Defendant only makes a conclusory argument in its reply brief that the EEOC position statement is hearsay. [Doc. 62, PageID 974]. Given Defendant's bare-boned statement regarding the exclusion of the EEOC statement as hearsay, the Court will consider it on this motion.
[4] The last letter in "Multih[]" is partially cutoff and indiscernible.

the light most favorable to the plaintiff, "multih[]" could be an abbreviation for "multi-head." Additionally, the timesheet appears to corroborate the EEOC statement. When addressing the time sheet, Defendant did not state whether "multih[]" meant "multi-head," and instead only said that "An employee's time[]card or pay card does not establish the job title or position held." [Doc. 63-1, PageID 1045]. Instead of resolving whether the timesheet indicates that Mr. Turner was the third-shift Flame Burner operator, Defendant deepens the disputed fact. And third, Mr. Stephens stated that he trained Doug Turner on the Flame Burner, although he did not state which shift Mr. Turner was training for. [Doc. 49-6, PageID 324]. With that evidence in the record, the Court would be deciding a disputed fact if it accepted Defendant's position, and the Court cannot rule that Plaintiff failed to establish a *prima facie* case because Defendant never hired someone as the third-shift Flame Burner operator.

Notwithstanding the disputed fact, Plaintiff argues that she could make out a *prima facie* case even if Doug Turner was not hired as the third-shift Flame Burner operator. [Doc. 58, PageID 432]. Plaintiff relies on a case from the United States District Court for the Southern District of Ohio, *Wilson v. Brennon*, 213 F. Supp. 3d 934 (S.D. Ohio 2016), to argue that "one can satisfy the last prong [of the *prima facie* case] by showing that a company eliminated a position after a Plaintiff in a protected class expressed interest in it." [*Id.*]. In *Wilson*, a plaintiff in a protected class expressed interest in a recently vacated position. *Wilson*, 213 F. Supp. 3d at 939. After the plaintiff expressed interest in the position, the position was, according to the defendant, eliminated due to a national restructuring. *Id.* at 940. Although the position was "eliminated," someone not in a protected class was assigned the work of the eliminated position. *Id.* Eventually, the plaintiff himself was assigned to do the work of the eliminated position but at a lower pay grade. *Id.* The

11

district court determined that these facts satisfied the fourth prong of the *prima facie* case, the same prong at issue here. *Id.* at 946–47.

In at least one other circumstance, the Sixth Circuit has said that a court may review the "legitimacy of [a company's] restructuring decisions at the *prima facie* stage," that is the elimination of a position. *Harmon v. Earthgrains Baking Companies, Inc.*, No. 08–5227, 2009 WL 332705, at *6 (6th Cir. Feb. 11, 2009). In that case, the Sixth Circuit decided that the elimination of the position did not satisfy the fourth prong of the *prima facie* case because the restructuring decision was made months before the adverse employment action. *Id.* Contrary to *Harmon*, in this case, however, the position was eliminated *during* the events of the alleged discrimination, not months before the alleged discrimination.

While the Court does not adopt Plaintiff's framing of the rule that "one can satisfy the last prong by showing that a company eliminated a position after a Plaintiff in a protected class expressed interest in it," Plaintiff has satisfied the fourth prong. Plaintiff has successfully called into question Defendant's decision—the "elimination" of the third-shift Flame Burner operator. Frankly, over half-a-dozen facts support finding that the fourth element has been satisfied. (1) The position was eliminated after Plaintiff showed interest. (2) Mr. McAllister offered the job to Plaintiff after or during the time that Mr. Hammond supposedly told Mr. McAllister and Mr. England not to fire anyone. (3) The position was eliminated after Plaintiff was offered the job. (4) The position was eliminated after Plaintiff tried to accept the job. (5) When telling Plaintiff that she did not get the job, the given reason was undisputedly false. (6) Mr. Hammond decided to keep staffing on Flame Burner at the same level (first and second shift), yet second shift was fired the next day. (7) Plaintiff was not offered the second-shift position. (8) Defendant chose to pay overtime to various employees to operate the Flame Burner on second and third shift, albeit, on a

12

very limited basis. Put simply, Plaintiff has shown "that she applied for an available position for which she was qualified[] but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

In its reply, Defendant argues that the Court will be acting as a "super-personnel department" if it rules against Defendant. [Doc. 62, PageID 972]. That is not so. The Court is simply evaluating whether a jury needs to decide the facts of the case, and Plaintiff has satisfied the first step of that evaluation. In this case, evidence in the record in the light most favorable to Plaintiff shows that Plaintiff met her burden.

2. Defendant's legitimate reason

With the burden shifting to Defendant, Defendant Siskin offers a succinct reason for not hiring Plaintiff. Defendant argues that Mr. Hammond, the sole decisionmaker on the matter, decided not to hire anyone for the third-shift Flame Burner position. [Doc. 48, PageID 179]. He made the decision after analyzing data and deciding that a third shift was not needed on the machine, especially considering Defendant was getting a new machine that could replace the Flame Burner. [*Id.*]. With a non-discriminatory reason, the burden shifts back to Plaintiff to produce evidence of pretext.

3. Pretext

The last step of the *McDonnel Douglas* framework is pretext. On summary judgment, "a plaintiff may meet her burden of demonstrating pretext by showing, in addition to proffered evidence, that an employer's reasons are so incoherent, weak, inconsistent, or contradictory that a rational jury could conclude the reasons were not believable." *Peck v. Elyria Foundry Co.*, 347 F. App'x 139, 147 (6th Cir. 2009); *see Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 269 (6th Cir. 2010) ("[A]n employer's shifting rationale can be evidence of pretext."). Some

13

examples of pretext include when "the defendant's proffered reason for taking adverse action either: (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate the adverse action." *Adebisi v. Univ. of Tennessee*, 341 F. App'x 111, 113 (6th Cir. 2009) (citing *Vincent v. Brewer Co.,* 514 F.3d 489, 497 (6th Cir.2007); *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 573 (6th Cir. 2000)). The bottom-line of this "commonsense inquiry" is "whether the employer made up its stated reason to conceal intentional discrimination." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009).

Here, the record contains evidence of pretext. Defendant's premise that Mr. Hammond was the sole decisionmaker is strained at best. Mr. Hammond's boss, COO Youngman told Mr. Hammond to hire all shifts. Viewed in light of the facts most favorable to Plaintiff, that means the decision to fill all shifts or not, including a third-shift Flame Burner Operator, was not Mr. Hammond's decision to make. Further, Mr. Hammond had, in his own words, "a big meeting in my office on that machine, on the flame, to not move forward." [Doc. 58-4, PageID 599]. Having a big meeting and coming to a decision does not support that Mr. Hammond was the sole decisionmaker. Before January 30th and the big meeting, Mr. Hammond's communications indicate that he had not made up his mind. For example, in the email to Rick England on January 23, Mr. Hammond said, "Lets hold on hiring anyone until we meet again. With some changes, we may not need quite as many as we discussed." [Doc. 49-8]. Only after the meeting did the decision become final.

Additionally, Plaintiff cites the multiple reasons provided for not hiring her as evidence of pretext. Defendant has provided two vastly different series of events. One of which was provided to the EEOC and one of which is provided to this Court. The Court cannot decide which story is true, only a jury can. And the two vastly different stories can provide grounds for a jury to think

14

Case 1:20-cv-00360-JRG-CHS   Document 68   Filed 05/25/22   Page 14 of 19   PageID #: 1124

that both reasons are "incoherent, weak, inconsistent, or contradictory" and therefore, unbelievable. *Peck*, 347 F. App'x at 147. Along with those two narratives, Mr. McAlister told Plaintiff a third reason, that she was not hired because four current employees signed up for the position overnight. This evidence is sufficient to show pretext.

Furthermore, Plaintiff has also offered evidence of direct discrimination, that, if admissible, would without question show pretext. The Court will briefly discuss, but not resolve, the evidentiary issues for the evidence of direct discrimination below.

In sum, Plaintiff has cast sufficient doubt on Defendant's reason for not hiring her and provided sufficient evidence of pretext. Evidence in the record suggests that Mr. Hammond was not the sole decisionmaker when eliminating the third-shift Flame Burner operator, and Defendant has provided inconsistent and contradictory reasons for not hiring her.

### 4. Conclusion

Because Plaintiff has satisfied her burdens under the *McDonnell Douglas* framework and disputes of material fact exist, Defendant's Motion for Summary Judgment must be denied.

### b. Direct Evidence of Discrimination

In her response, Plaintiff argues that the motion for summary judgment should be denied because she can prove her case by direct evidence. The Court is not in a position to rule on this matter because evidentiary issues exist. Given that the motion must be denied based on the circumstantial evidence test alone, attempting to resolve the evidentiary issues would be imprudent. Regardless, the Court will briefly address the issues to demonstrate their importance.

Direct evidence of discrimination "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."

*Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012) (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999)).

Plaintiff submits pieces of testimony as direct evidence of discrimination. In her deposition, Plaintiff said, "I get a phone call from Buddy [Stephens] saying that Todd [McAllister] said there was going to be a problem because they didn't know where I was going to go to the bathroom." [Smith Dep., Doc. 49-2, PageID 274–75]. Additionally, Plaintiff testified, "And, also, Todd told Buddy that one of the supervisors there didn't think Todd was serious about hiring a woman." [Smith Dep., Doc. 58-2, PageID 480].

Plaintiff asserts that these statements will be admissible at trial under Rules 801, 803, or 807 of the Federal Rules of Evidence. [Doc. 58, PageID 427–29]. Defendant contends that the statements are inadmissible hearsay. [Doc. 62, PageID 970–71].

Whether the statements are admissible could turn on whether the statements were admissions of a party opponent. Considering the statements were made by employees, this would require a fact-intensive inquiry into whether Mr. Stephens and Mr. McAllister were acting within the scope of their employment under Rule 801(d)(2). The record will need more factual development before such a ruling can be made. Currently, the record shows that both were involved in the interview process for Plaintiff. They interacted with Plaintiff often, had follow-up conversations with her, gave her a tour of the production area, participated in her interview, and showed her how to use the equipment. Similarly, Mr. Stephens also had some responsibility for training people, at least Mr. Turner, on the Flame Burner.

Additionally, Mr. Stephens made a statement in his deposition that corroborates Plaintiff's testimony. While he said that he did not recall any specific conversations, he acknowledged that he probably had a conversation with Mr. McAllister about where Plaintiff would go to the

bathroom because he did not "personally know where she would go" as all of the restrooms in the production area were used by men. [Doc. 49-6, PageID 323].

In its reply brief, Defendant argues that any statement made about restrooms by Mr. McAllister and Mr. Stephens are inapposite. [Doc. 62, PageID 970–71]. According to Defendant, the statements did not come from the sole decisionmaker, Mr. Hammond. [*Id.*]. But as already discussed, whether Mr. Hammond was the sole decisionmaker is an open question.

For those reasons, the Court will reserve a ruling on the evidentiary issues implicated by the direct discrimination evidence.

## V. Limiting Damages

Defendant next argues that even if the motion for summary judgment on the merits is denied, the Court should limit Plaintiff's damages as a matter of law. Title VII imposes a duty to mitigate damages. 42 U.S.C. § 2000e–5(g)(1). It states, "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." [*Id.*]. The standard requires a plaintiff "to use reasonable diligence in finding other suitable employment." *Ford Motor Co. v. E. E. O. C.*, 458 U.S. 219, 231–32 (1982). The plaintiff does not have to change lines of work or accept a demotion, but "an employer charged with unlawful discrimination often can toll the accrual of backpay liability by unconditionally offering the claimant the job he sought, and thereby providing him with an opportunity to minimize damages." *Id.* The job offer must be for a "substantially equivalent to the one [s]he was denied." *Id.* at 31. Usually, the trier of fact decides "whether a reasonable person would refuse the offer of reinstatement." *McKelvey v. Geren*, No. 07–14538, 2009 WL 3241997, at *2 (E.D. Mich. Oct. 7, 2009) (quoting *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 808 (1st Cir. 1982)).

Defendant offers three grounds for limiting damages. First, Defendant argues that Plaintiff would have been laid off by April 27, 2020, due to COVID–19. [Doc. 48, PageID 181]. Defendant bases this on its last-in/first-out policy. [*Id.*]. But Defendant only laid off warehouse employees, not employees on processing equipment. Plaintiff would have worked on processing equipment. Therefore, it appears from the record that Plaintiff would not have been laid off due to COVID–19. This is an inadequate ground for limiting damages.

Second, Defendant argues that Plaintiff's damages are limited because she obtained a job at her former employer and then quit to start a family business. [Doc. 48, PageID 183]. Defendant says, "Once she obtained this job, Plaintiff's back pay recovery was limited to the difference in hourly pay between what she would have earned at Siskin and what she earned at UltiMachine." [*Id.*]. However, contradicting this is a summary of Plaintiff's pay while at UltiMachine. Plaintiff earned inconsistent pay from this job, as low as $95.62 for one week, and while she may have made an hourly rate similar to what Defendant offered, she worked far fewer hours. Additionally, Plaintiff often made more, consistent money at the family business than at her former employer. Therefore, the Court will not limit damages based on when she started or when she quit UltiMachine or her hourly rate at UltiMachine.

Third, Defendant argues that Plaintiff's damages are limited because Defendant offered her a job as a warehouse worker in October of 2020. Defendant offered her the same pay that she would have made as a Flame Burner operator. The job offer was not conditional and did not require her to dismiss this lawsuit. Usually, when a defendant offers an unconditional job to a plaintiff, the defendant can limit its exposure in a discrimination case. *Ford Motor Co.*, 458 U.S. at 231–32. However, the position offered must be "substantially equivalent to the position [she] would have held . . . ." *Id.* Here, the Court is in no position to decide this matter. Beyond the fact that

18

reasonableness is generally saved for the trier of fact, the Court would also be in the position of deciding if an entry-level warehouse position is "substantially equivalent" to a Flame Burner position. The record only contains information that the Flame Burner is used to cut sheet metal. There is little to no description of what the person actually does and how that compares and contrasts with the work of an entry-level warehouse worker. Therefore, the Court will not limit the damages based on the offer of a warehouse position.

For the reasons stated above, the Court will not limit damages as a matter of law. Here, a trier of fact must decide reasonableness. Therefore, Defendant's motion for summary regarding the limitation of damages is denied.

**VI. Conclusion**

Defendant Siskin Steel & Supply Company, Inc., filed a motion for summary judgment and argued that it is entitled to judgment as a matter of law or, in the alternative, that Plaintiff's damages should be limited. Based on the record before the Court, Defendant is not entitled to judgment on either ground. Questions of fact permeate this case. Further, in the light most favorable to Plaintiff, granting summary judgment for Defendant would be contrary to law. Therefore, Defendant's motion for summary judgment, [Doc. 47], is DENIED.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE